548 A.2d 1317

Karen A. Ritter, Babette Josephs, and Andrew J. Carn, State Representatives, Petitioners *v.* Commonwealth of Pennsylvania, and The Honorable Robert Casey, as Governor of The Commonwealth of Pennsylvania, Respondents.

*Robert F. Williams*, for petitioners.

*Gregory R. Neuhauser*, Senior Deputy Attorney General, with him, *Kate L. Mershimer*, Deputy Attorney General, *John G. Knorr, III*, Chief Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman*, Attorney General, for respondents.

*Stefan Presser*, for intervenor, American Civil Liberties Union of Pennsylvania.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., October 13, 1988:

Seven members of the House of Representatives of Pennsylvania[1] (petitioners) have filed a petition for review in this Court's original jurisdiction, 42 Pa. C. S. §761(a), seeking a declaration that the passage of Act 31 of 1988 (Act 31) violated Article III, Sections 1, 2 and 3 of the Commonwealth Constitution.[2] Named as respondents are the Commonwealth of Pennsylvania and the Honorable Robert Casey, as Governor of the Commonwealth. The parties have filed stipulations of fact with this Court, and each has filed a motion for summary judgment seeking relief.

---

[1] State Representatives Karen A. Ritter, Babette Josephs, Andrew J. Carn, William H. DeWeese, John S. Davies, Allen Kukovich and Dwight Evans are the petitioners.

[2] Petitioners initially sought a preliminary injunction enjoining the enforcement of Act 31; however, by agreement of the parties, the request for injunctive relief was withdrawn and the matter was expedited by the filing of cross motions for summary judgment.

Act 31, as enacted by the General Assembly, amended various chapters of the Crimes Code, 18 Pa. C. S. §§101-9183, by providing for rights of a district attorney in litigation involving prisoners; providing additional penalties for underage drinking and sale of alcohol to minors; providing additional penalties for drug trafficking to minors; providing penalties for the scattering of rubbish; and regulating matters relating to the performance and funding of abortions. Act 31 originated in the House of Representatives as House Bill (H.B.) 668. The bill consisted of twelve pages legislating underage drinking and was first approved by the House Committee on Liquor Control. After passage by the entire House, H.B. 668 was partially amended (as to those provisions relating to underage drinking) on the Senate Floor, and the bill was referred to a Senate Committee.

When H.B. 668 was again considered on the Senate floor, amendments were offered and approved. Additionally, a section establishing a system of earned time for prisoners leading to early release from prison was included in H.B. 668. The entire bill, as amended, returned to the House for concurrence. Under House Rule 30, amendments may not be offered to Senate amendments of House bills which return to the House on a question of concurrence. By majority vote, the House temporarily suspended its rules and deleted the parole legislation, but passed the remainder of H.B. 668, as amended, by a vote of 147-44. Governor Casey signed the bill on March 25, 1988.

Article III, Sections 1, 2 and 3 of our Constitution prescribe certain restrictions on the passage of laws by the General Assembly. Section 1 provides that no law shall be passed except by bill, which cannot be so altered or amended on passage through either House as to change its original purpose. Section 2 states that no bill can be considered unless referred to a committee,

returned therefrom, and printed for the use of the members. Section 3 establishes that no bill shall be passed containing more than one subject, expressed clearly in the title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.

The petitioners argue that the five distinct areas legislated are so different in purpose and substance that Act 31 contains more than one subject and was passed in drastic alteration of its original purpose. Additionally, the petitioners argue that failure of the abortion provisions to be reported out-of-committee violates Article III, Section 2. Petitioners request that Act 31 be declared unconstitutional in its entirety or that those parts which are illegal be stricken.

The respondents request summary judgment, or the dismissal of the action, arguing that petitioners lack standing to bring this challenge. Respondents also contend that non-justiciable issues are present and, in the alternative, that the Act was passed consistent with constitutional mandates.

Summary judgment shall be granted only when no factual questions are present, and where the right to legal relief is clearly established. *Pennsylvania Independent Petroleum Producers v. Department of Environmental Resources,* 106 Pa. Commonwealth Ct. 72, 525 A.2d 829 (1987), *cert. denied,* U.S. , 1989.

Initially, we review the issue of standing. Petitioners allege that the passage of Act 31 "interfered with Petitioners' ability to perform their constitutional duties as members of the House of Representatives . . . . As a result, Petitioners were unable adequately and completely to represent their constituents." (Petition for Review, para. 14) Respondents argue that this interest is no greater or distinguishable from that of the general public and hence standing is unfounded. *William Penn Parking Garage v. City of Pittsburgh,* 464 Pa. 168, 195-97, 346 A.2d 269, 282-83 (1975).

The critical question of standing was articulated by the United States Supreme Court in *Baker v. Carr*, 369 U.S. 186 (1962): "[H]ave the appellants alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions?" *Id.* at 204. We believe that the question of a legislator's standing, as reviewed by our Supreme Court in *Zemprelli v. Daniels*, 496 Pa. 247, 436 A.2d 1165 (1981), is controlling of the issue presented herein. As in *Zemprelli v. Daniels*, the petitioners have averred that their "effectiveness as legislators has been impaired because their votes were in effect 'diluted.' " *Id.* at 252, 436 A.2d at 1167. Petitioners assert that procedures used to enact Act 31 resulted in an interference with their legal rights and duties to act as legislators. Consequently, by review of the substantive issues presented by the petitioners, this Court can determine "whether or not petitioners' effectiveness . . . has in fact been impaired." *Id.* at 253, 436 A.2d at 1168. Thus, we conclude that the petitioners have standing to bring this action.

Next, we must decide whether the petition presents a non-justiciable political question, as respondents argue. This doctrine is derived from the separation of powers provided by our tripartite federal constitutional governments, *Powell v. McCormack*, 395 U.S. 486 (1969), and has been applied to our Commonwealth governance as well. *Sweeney v. Tucker*, 473 Pa. 493, 375 A.2d 698 (1977).

In *Baker v. Carr*, the United States Supreme Court enunciated guidelines to determine whether a case presents a political question. There, it was stated that each of the several formulations which may be used to describe a political question

has one or more elements which identify it as essentially a function of the separation of powers. Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment . . . to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. at 217.

Our Supreme Court has relied on this framework of inquiry to decide whether a purely political question is set forth for a court's disposition. *Thornburgh v. Lewis,* 504 Pa. 206, 470 A.2d 952 (1983); *Zemprelli v. Daniels; Sweeney v. Tucker,* and we, of course, adhere to its instruction.

Of course, where they exist, constitutional limitations on the legislature's power to determine its internal procedures are judicially enforceable. *Sweeney v. Tucker,* 473 Pa. at 516, 375 A.2d at 705. However, the dispute here involves something more than the interpretation of a constitutional limitation on procedure.

### Article III, Section 1

The petitioners contend that Act 31 violates this constitutional section because its original purpose was altered by several disparate amendments on the Senate

floor. Although two of the petitioners voted to suspend Rule 30 so as to consider generally those Senate amendments, they were unsuccessful in sustaining a majority vote in favor of suspension. Petitioners now ask us to declare the legislation as amended and passed by both houses of the General Assembly constitutionally defective. They argue that because these amendments provided for criminal sanctions for offenses other than underage drinking—the original subject matter of the bill—it is so altered as to change its original purpose. However, we are not persuaded that Article III, Section 1, requires such an overly burdensome and inflexible interpretation. As our Supreme Court stated in *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986):

> The expansive interpretation urged by appellants would suggest that any material change in a piece of legislation during its passage would cause it to be constitutionally suspect. Such an interpretation would be incompatible with the traditional legislative process. [3]

*Id.* at 181, 507 A.2d at 335.

In order to effectuate the ends of the legislative process, "the permissible scope of amendments to a bill has always been extremely broad." *Id.* at 188, 507 A.2d at 338. Where, as here, the bill in *final* form, with a title clearly stating its contents was presented to each house for consideration and adoption, there is no basis

---

[3] Although in *Consumer Party* the challenged legislation did not change after the bill was reported out of conference committee and while it was presented for final passage by both houses, we do not find the distinction between *Consumer Party* and the present litigation material. Our Supreme Court, in the language quoted above, instructs that material changes are not necessarily fatal when made *during a bill's passage* without reference to any particular step of the legislative process where a change could be made.

for sustaining the Article III, Section 1 challenge. *Id.* at 181, 507 A.2d at 335.

## Article III, Section 2

Petitioners advance the theory that the amendments to Act 31 actually constitute a separate bill that was never referred to committee, in violation of this constitutional provision. However, our review of the pleadings pertinent to this argument indicates a "textually demonstrable constitutional commitment . . . to a coordinate political department. . . ." *Baker v. Carr.* Article II, Section 11 of the Pennsylvania Constitution commits to each house of the legislature the "power to determine the rules of its proceedings."

The pleadings, the briefs and stipulations herein lead to the conclusion that petitioners request this Court to interfere in a solely legislative matter. Those petitioners who were in attendance during the votes and discussions on amendments and concurrence had the opportunity to challenge Act 31 or parts thereof, procedurally and substantively during that period. Moreover, petitioners did not bring a constitutional challenge to Act 31 pursuant to House Rule 4. Stipulation of Fact No. 34.

Both the Senate and House have exclusive power over their internal affairs and proceedings, *Zemprelli v. Daniels,* 496 Pa. at 257, 436 A.2d at 1170, which we will not review. *Zemprelli v. Scranton,* 102 Pa. Commonwealth Ct. 637, 519 A.2d 518 (1986). We decline to review them precisely because we lack "judicially discoverable and manageable standards for resolving the questions presented," *Baker v. Carr,* which would require the "compulsion of [legislative] decision-making," *Lewis v. Thornburgh,* 68 Pa. Commonwealth Ct. 157, 163, 448 A.2d 680 (1982). By requesting this Court to review the process by which legislation was validly en-

acted by the General Assembly, petitioners are asking the judiciary to be involved in a non-justiciable, legislative function.

### Article III, Section 3

Petitioners argue that Act 31 violates the Constitution's single-subject requirement. The Act contains amendments to the Crimes Code relating to district attorney's rights in prisoner litigation; penalties for underage drinking and sale of alcohol and drugs to minors; penalties for improper rubbish disposal; penalties for the improper reporting and performance of abortions.

Despite the disparity in the types of acts described for which sanctions are imposed, we have no problem in concluding that Act 31, as enacted, embraces a single subject—*i.e.*, amendments to the Penal Code. Petitioners apparently suggest that had this Act been drafted, in the first instance, as a bill containing the matters covered by the Senate amendments, the Act would pass constitutional muster. They offer no argument for its infirmity other than their difficulty in overcoming the procedural hurdle of suspending Rule 30. Again, petitioners ask this Court to tread dangerously close to judicial inquiry into the internal operating procedures of the General Assembly. However, to the extent that the petitioners present a justiciable claim, we find no violation of Article III, Section 3, since all of the amendments relate to proscribed acts under the Penal Code. To find otherwise would make unified amendments to codification of the law impossible.

Summary judgment is granted in favor of the Commonwealth and its Governor.

### ORDER

Petitioners' motion for summary judgment is denied. Respondents' motions for summary judgment are granted.

This decision was reached prior to the resignation of Judge MACPHAIL.