IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Senate                       :
Intergovernmental Operations              :
Committee,                                :
                    Petitioner        :
                                   :
        v.                                :        No. 95 M.D. 2022
                                   :        Argued: September 12, 2022
Pennsylvania Department of State          :
and Leigh Chapman, in her Capacity        :
as Acting Secretary of the                :
Commonwealth,                             :
                    Respondents       :

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT                FILED:  February 9, 2023

       In this original jurisdiction matter, the Pennsylvania Senate Intergovernmental Operations Committee (Senate Committee or Committee) has filed a petition for review against the Pennsylvania Department of State (Department) and Leigh Chapman, Acting Secretary of the Commonwealth (collectively, Acting Secretary), seeking a writ of mandamus to compel the Acting Secretary to comply with her statutory duty to produce certain election-related records in the possession of the Department. Alternatively, the Senate Committee seeks an order compelling the Acting Secretary to comply with the Committee's subpoena *duces tecum* for these election-related documents.

       Intervention was granted to Senator Jay Costa, Senator Anthony H. Williams, Senator Vincent J. Hughes, Senator Steven J. Santarsiero, and the Senate Democratic Caucus (collectively, Senator Intervenors) and to Roberta Winters, Nichita Sandru, Kathy Foster-Sandru, Robin Roberts, Kierstyn Zolfo, Michael

Zolfo, Ben Bowens, the League of Women Voters of Pennsylvania, Common Cause Pennsylvania, and Make the Road Pennsylvania (collectively, Voter Intervenors).

The Acting Secretary has filed preliminary objections to the petition for review, seeking its dismissal. Senator Intervenors have filed a preliminary objection challenging the Senate Committee's ability to seek a writ of mandamus without a vote of the Senate Committee. For its part, the Senate Committee has filed an application for summary relief seeking a writ of peremptory mandamus to compel the Acting Secretary to produce election-related records in the custody of the Department.

For the reasons to follow, we dismiss the petition for review. In doing so, we overrule the preliminary objection challenging the Senate Committee's capacity to sue; we sustain the preliminary objection in the nature of a demurrer; and we deny the Senate Committee's application for summary relief.

**Background**

The Senate Committee is a permanent standing committee of the Senate of Pennsylvania, with the responsibility to review "the work of the Commonwealth agencies concerned with their subject areas and the performance of the functions of government within each such subject area[.]" Petition for Review, ¶¶4, 6. The Senate Committee is made up of nine senators and the Senate President Pro Tempore, who serves *ex officio* as a voting member. The Committee is empowered "to inspect and investigate the books, records, papers, documents, data, operation and physical plant of any public agency in this Commonwealth" and "may issue subpoenas, subpoenas duces tecum and other necessary process to compel the attendance of witnesses and the production of any books, letters or other documentary evidence desired by the committee." *Id.*, ¶7.

2

On September 9, 2021, the Committee held a public hearing on potential election law amendments where it heard testimony from county commissioners on the information and directives provided by then-Acting Secretary of the Commonwealth, Veronica Degraffenreid. *Id.*, ¶¶13, 16. The Acting Secretary provided written testimony.

On September 15, 2021, the Committee voted to issue a subpoena *duces tecum* to the Acting Secretary to produce 17 categories of election-related documents, that included, *inter alia*, communications from the Department to a County Election Director or County Election Board between May 1, 2020, and May 31, 2021; all directives, guidances, policies or procedures in effect between August 1, 2020, and June 30, 2021, relating to elections, election systems, mail-in ballot applications, voting, compliance with election laws, polling places, and/or poll watchers; all changes to voter records made between May 31, 2020, and May 31, 2021; and a list of all electors who voted in person, by mail-in ballot, and by absentee ballot in the November 2020 General Election and in the May 2021 Primary Election. Petition for Review, ¶17, Exhibit A. The subpoena requested the voter information contained in the Statewide Uniform Registry of Electors (SURE)[1] system, *i.e.*, voters' names, addresses, dates of birth, and last four digits of their social security numbers. *Id.*, ¶18. The subpoena *duces tecum* was served upon the Acting Secretary on that same day, requesting delivery of documents to counsel for the Senate Republican Caucus on October 1, 2021. *Id.*, ¶21.

In response, the Acting Secretary filed a petition for review against the Senate Committee Chairman, the Senate President Pro Tempore, and the Senate

---

[1] 25 Pa. C.S. §1222. The SURE system allows for electronic searching for registered voters by name and party and permits a signature to be retrieved for comparison to confirm registration status. Additionally, the SURE system allows for identification of registered voters who vote in an election and the method by which their ballots were cast.

Committee to enjoin enforcement of the subpoena. *See Pennsylvania Department of State v. Coleman* (Pa. Cmwlth., No. 322 M.D. 2021).[2] The petition alleged, *inter alia*, that the requested documents compromised the informational privacy rights of registered voters, the deliberative process privilege, and critical infrastructure information under federal law. Petition for Review, ¶22. Nevertheless, the Acting Secretary produced some of the subpoenaed documents, in redacted form, on November 18, 2021, December 24, 2021, and January 27, 2022. *Id.*, ¶26.

On March 11, 2022, the Senate Committee filed its own petition for review to compel the Acting Secretary by writ of mandamus to allow the Committee's inspection of the "books, papers, records, and accounts filed in the department." *Id.*, ¶2. In the alternative, the Senate Committee sought to compel the Acting Secretary to comply with the September 15, 2021, subpoena *duces tecum*.

In response, the Acting Secretary filed preliminary objections seeking a dismissal of the petition for review. She asserts that the Senate Committee lacks capacity to sue; its pleading is legally insufficient; and its pleading failed to join indispensable parties.[3] Senator Intervenors' preliminary objection asserts that the Committee lacks enforcement authority.

On May 13, 2022, the Senate Committee filed an application for summary relief in the nature of a peremptory mandamus. The Committee asserts that Section 802 of The Administrative Code of 1929, Act of April 9, 1929, P.L.

---

[2] Additionally, Senator Intervenors filed a petition for review in the nature of injunctive and declaratory relief to prevent enforcement of the subpoena. *See Costa v. Ward* (Pa. Cmwlth., No. 310 M.D. 2021). Individuals, Arthur Haywood and Julie Haywood, also filed a petition against Acting Secretary Chapman challenging the subpoena and seeking declaratory and injunctive relief. *Haywood v. Chapman* (Pa. Cmwlth., No. 323 M.D. 2021).

[3] The Acting Secretary did not brief the issue of failure to join indispensable parties. A party waives a preliminary objection it does not support in its brief. *Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1219 (Pa. Cmwlth. 2018).

4

177, *as amended*, 71 P.S. §272, and Section 1 of the Act of March 12, 1791 (Act of 1791), 3 Sm.L. 8, 71 P.S. §801, require the Secretary of the Commonwealth to permit any legislative committee to inspect and examine any books, papers, records, and accounts filed in the Department or in possession of the Acting Secretary. Alternatively, the Senate Committee argues that it is entitled to summary relief in the form of peremptory mandamus to enforce its subpoena *duces tecum*.

The Acting Secretary, Voter Intervenors, and Senator Intervenors oppose the Senate Committee's application for summary relief. The Acting Secretary argues that the Committee is not entitled to a writ of mandamus because the law is not clear that she has a mandatory duty to provide access to the materials requested by the Senate Committee. A request for voter registration information in the SURE system requires the Secretary of the Commonwealth to exercise discretion to balance the informational privacy interest of registered voters against the public interest in disclosure, as required by Article I, Section 1 of the Pennsylvania Constitution.[4] Senator Intervenors argue that because the Senate Committee did not take a vote to initiate the instant petition for review, its petition for review was not authorized.

## I. Preliminary Objections

## A. Scope and Standard of Review of Preliminary Objections

On preliminary objections, our scope of review is limited to the pleadings. *Pennsylvania State Lodge, Fraternal Order of Police v. Department of*

---

[4] It states:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

PA. CONST. art. I, §1.

*Conservation and Natural Resources*, 909 A.2d 413, 415 (Pa. Cmwlth. 2006). We must accept as true the well-pled averments set forth in the Senate Committee's petition for review and any reasonable inferences deducible therefrom. *Pennsylvania State Troopers Association v. Commonwealth of Pennsylvania*, 606 A.2d 586, 587 (Pa. Cmwlth. 1992). This principle does not extend to legal conclusions asserted in the pleading. *Mazur v. Cuthbert*, 186 A.3d 490, 502 (Pa. Cmwlth. 2018).

Pennsylvania Rule of Civil Procedure 1028(a) sets forth the bases upon which a party may preliminarily object to a pleading. Those grounds are:

(1)     lack of jurisdiction over the subject matter of the action or the person of the defendant, improper venue or improper form or service of a writ of summons or a complaint;

(2)     failure of a pleading to conform to law or rule of court or inclusion of scandalous or impertinent matter;

(3)     insufficient specificity in a pleading;

(4)     legal insufficiency of a pleading (demurrer);

(5)     lack of capacity to sue, nonjoinder of a necessary party or misjoinder of a cause of action;

(6)     pendency of a prior action or agreement for alternative dispute resolution;

(7)     failure to exercise or exhaust a statutory remedy; and

(8)     full, complete and adequate non-statutory remedy at law.

PA.R.CIV.P. 1028(a).

### B. Senator Intervenors' Preliminary Objection

Senator Intervenors seek dismissal of the petition for review for the stated reason that the Senate Committee lacks enforcement authority. They contend that the Committee chair did not have the authority to initiate a mandamus action in the name of the Committee.

6

In support, Senator Intervenors direct us to Senate Rule 14(d)(3), which provides:

> In order to carry out its duties, each standing committee or special committee . . . may issue subpoenas, subpoenas duces tecum and other necessary process to compel the attendance of witnesses and the production of any books, letters or other documentary evidence desired by the committee. *The chair may administer oaths and affirmations in the manner prescribed by law to witnesses who shall appear before the committee to testify*.

RULES OF THE SENATE OF PENNSYLVANIA, Rule 14(d)(3) (2021-2022); https://www.pasen.gov/rules.cfm (last visited February 9, 2023) (emphasis added).[5] Further, Mason's Manual of Legislative Procedure[6] provides that enforcement power is vested in the committee as a whole. It states, in relevant part, as follows:

> The presence of a quorum is required in order for a committee to act legally and officially. A committee cannot legally transact business and it is irregular to proceed to the consideration of business in the absence of a quorum.

MASON'S MANUAL OF LEGISLATIVE PROCEDURE §613(1) (2010). In further support, Senator Intervenors cite *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 505 (1975) ("It also has been held that the subpoena power may be exercised by a committee acting, as here, on behalf of one of the Houses.") (citation omitted).

The Senate Committee responds that "lack of enforcement authority" is not an enumerated preliminary objection and, thus, this objection is facially

---

[5] On January 3, 2023, the Senate adopted the Rules of the Senate for the governing of the 207th and 208th Regular Session. *See* Senate Resolution No. 3, adopted January 3, 2023; https://www.legis.state.pa.us/CFDOCS/Legis/PN/Public/btCheck.cfm?txtType=PDF&sessYr=2023&sessInd=0&billBody=S&billTyp=R&billNbr=0003&pn=0003 (last visited February 9, 2023).

[6] Senate Rule 26 provides that Mason's Manual of Legislative Procedure governs "the Senate in all cases to which [it is] applicable, and in which [it is] not inconsistent with the Standing Rules, Prior Decisions and Orders of the Senate." RULES OF THE SENATE OF PENNSYLVANIA (2021-2022), Rule 26; *see also* 101 Pa. Code §7.32.

defective. *See* PA.R.CIV.P. 1028(a)-(b). In any case, the challenge of Senator Intervenors is non-justiciable because it is predicated on the failure of the General Assembly to adhere to its own rules. *See Jubelirer v. Singel*, 638 A.2d 352, 360 (Pa. Cmwlth. 1994) (alleged deprivation of the right to vote on "how the Senate conducts its business" involved a non-justiciable controversy). In *Dintzis v. Hayden*, 606 A.2d 660 (Pa. Cmwlth. 1992), the petitioner brought a claim against several representatives for their alleged violation of House voting rules. This Court held it would "not adjudicate the issue because the violations of the House's own internal rules do not present a justiciable controversy," and "if those rules have not been followed it is up to the House, not this Court, to remedy the situation." *Id.* at 662. The Senate Committee argues that Senator Intervenors' assertion that the Committee has not followed Senate rules presents a non-justiciable claim.

We agree that "lack of enforcement authority" is not a specifically enumerated preliminary objection in PA.R.CIV.P. 1028(a). *See also* PA.R.CIV.P. 1028(b).[7] We construe "lack of enforcement authority" to mean "lack of capacity to sue" under PA.R.CIV.P. 1028(a)(5), which is an enumerated preliminary objection. Essentially, Senator Intervenors argue that neither the Senate Committee Chairman nor the Senate Committee has the "capacity" to bring this action without a vote by the entire Committee.

A non-justiciable political question is presented where there is a challenge to legislative action which the Constitution has committed exclusively to the legislature. *Sweeney v. Tucker*, 375 A.2d 698, 705 (Pa. 1977). Courts will not review actions of another branch of government that have been entrusted exclusively

---

[7] It states: "All preliminary objections shall be raised at one time. *They shall state specifically the grounds relied upon* and may be inconsistent. Two or more preliminary objections may be raised in one pleading." PA.R.CIV.P. 1028(b) (emphasis added).

to that branch for self-monitoring. *Id*. at 706. In deciding whether a dispute concerns a non-justiciable political question, the Pennsylvania Supreme Court in *Sweeney* adopted the standards enunciated in *Baker v. Carr*, 369 U.S. 186 (1962) (*Baker*). Therein, the United States Supreme Court explained the political question doctrine as follows:

> It is apparent that several formulations which vary slightly according to the settings in which the questions arise may describe a political question, although *each has one or more elements which identify it as essentially a function of the separation of powers. Prominent on the surface of any case held to involve a political question* is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or *the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government*; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id*. at 217 (emphasis added). The presence of any one of these elements will prompt a court to refrain from considering the claim asserted. *Zemprelli v. Daniels*, 436 A.2d 1165, 1169 (Pa. 1981).

In sum, *Baker* established that the legislature's compliance with its internal rules and procedures presents a political question and, as such, is non-justiciable. Courts cannot interfere with the internal workings of the legislature "without expressing lack of the respect due coordinate branches of government." *Baker*, 369 U.S. at 217.

9

With these principles in mind, we turn to Senator Intervenors' argument that the Senate Committee lacked capacity to file the instant petition for review seeking a writ of mandamus. This argument is based on Senate Rule 14(d)(3) and Mason's Manual of Legislative Procedure. Senator Intervenors claim that they do not ask the Court "to peer behind the curtain of the inner workings of a legislative body." Senator Intervenors Reply Brief at 2. We disagree.

Deviation from Senate rules is a matter for the Pennsylvania Senate, not this Court. S*ee Dintzis*, 606 A.2d 660 (claim that a member of the Pennsylvania House of Representatives violated House rules by manipulating his electronic roll call device presented a non-justiciable political question); *Ritter v. Commonwealth*, 548 A.2d 1317 (Pa. Cmwlth. 1988), *aff'd per curiam*, 557 A.2d 1064 (Pa. 1989) (Pennsylvania House of Representatives has exclusive power over its internal affairs and proceedings and courts will not review the legislature's internal affairs). Whether the Senate Committee followed the internal operating rules of the Senate for initiating this instant action is for the Senate, not this Court, to review and to remedy.

Accordingly, we overrule Senator Intervenors' preliminary objection that the Senate Committee lacks enforcement authority.

### C. Acting Secretary's Preliminary Objections

### 1. Lack of Capacity to Sue

The Acting Secretary argues that this Court should dismiss the Senate Committee's petition for review because neither the Senate as a body nor the Senate Committee has authorized a civil action to enforce the subpoena *duces tecum*. The Acting Secretary adds that Pennsylvania Rule of Civil Procedure 2002(a) requires that "all actions shall be prosecuted by and in the name of the real party in interest[.]" PA.R.CIV.P. 2002(a). The Senate Committee Chairman is not a real party in interest.

10

Only the Senate Committee can decide whether or how to enforce its subpoena, and its Chairman has no authority to bring suit in the name of the Committee on his own initiative.

The Senate Committee responds that the Acting Secretary's preliminary objection misapprehends capacity to sue, which requires that "a would-be plaintiff must have an actual or legal existence." Senate Committee Brief at 26 (citing *Philadelphia Facilities Management Corporation v. Biester*, 431 A.2d 1123, 1127 (Pa. Cmwlth. 1981)). "The plaintiff may be a natural or artificial person," but as long as it is "an entity which the law recognizes[,]" it has the capacity to sue. *Biester*, 431 A.2d at 1127. The Senate Committee observes that the Acting Secretary does not suggest that the Senate Committee lacks the power to appear in court. *See In re Estate of Sauers*, 32 A.3d 1241, 1248 (Pa. 2011) (capacity to sue refers to the legal ability of a person to come into court). Indeed, Senator Intervenors named the Senate Committee as a defendant in their equity action. *See Costa v. Ward* (Pa. Cmwlth., No. 310 M.D. 2021). The Senate Committee also contends that the Acting Secretary's argument that this instant action is not prosecuted by the real party in interest must be rejected because it was not raised by separate preliminary objection. In any case, the Senate Committee contends that the argument lacks merit.

As acknowledged by the Acting Secretary, the "real party in interest" is "a person who has the power to discharge the duties created and to control a cause of action and the proceedings brought to enforce it." Acting Secretary Brief at 6 (quoting *Lore v. Sobolevitch*, 675 A.2d 805, 808 (Pa. Cmwlth. 1996)). The concept of real party in interest is related to standing, which "is concerned only with the question of *who* is entitled to make a legal challenge to the matter involved." *Pennsylvania Game Commission v. Department of Environmental Resources*, 555

11

A.2d 812, 815 (Pa. 1989) (emphasis in original). Our Supreme Court has further explained:

> Although our law of standing is generally articulated in terms of whether a would-be litigant has a "substantial interest" in the controverted matter, and whether he has been "aggrieved" or "adversely affected" by the action in question, we must remain mindful that the purpose of the "standing" requirement is to insure that a legal challenge is by a proper party.

*Pennsylvania Game Commission*, 555 A.2d at 815.

The Senate Committee argues that it is the real party in interest and entitled to challenge the Acting Secretary's refusal to comply with the subpoena *duces tecum*. We agree. No other person can enforce its subpoena, and the Committee has a substantial interest in obedience to its subpoena. Although Rule 2002(a) of the Pennsylvania Rules of Civil Procedure, PA.R.CIV.P. 2002(a), does not define "real party in interest," it is the person with the power "to control the prosecution of the action brought to enforce rights arising under the claims." *Clark v. Cambria County Board of Assessment Appeals*, 747 A.2d 1242, 1246 n.9 (Pa. Cmwlth. 2000). The Senate Committee is the party in command of the action and, accordingly, the real party in interest.

The Senate Committee has an interest in securing the materials it has requested from the Department; is the party to determine whether the Acting Secretary has complied with the subpoena; and is the party that can withdraw this action. Further, the verification to the petition for review did not make its Chairman the real party in interest.[8] Because a legislative committee is not a natural person, it

---

[8] As noted by the Senate Committee, its Chairman was permitted to verify the petition for review on the Committee's behalf. *See* RULES OF THE SENATE OF PENNSYLVANIA (2021-2022), Rule 15(d) ("The Chair shall sign all notices, vouchers, subpoenas or reports required or permitted by these Rules.").

cannot affix a signature and must rely on the verification of a natural person, such as its Chairman. *See generally Lokay v. Lehigh Valley Cooperative Farmers, Inc.*, 492 A.2d 405 (Pa. Super. 1985) (fictional legal person such as a corporation must act through its officers, directors, or other agent).

Finally, the internal decision-making of the Senate Committee on whether, or how, to enforce its subpoena *duces tecum* is non-justiciable and beyond this Court's review. The legislature may delegate its powers to a committee and authorize it to issue subpoenas in connection thereto. *Annenberg v. Roberts*, 2 A.2d 612, 616 (Pa. 1938). The legislature has power to legislate in the area of elections. *Mixon v. Commonwealth*, 759 A.2d 442, 449 (Pa. Cmwlth. 2000) (citing *Winston v. Moore*, 91 A. 520 (Pa. 1914) ("The power to regulate elections is legislative, and has always been exercised by the lawmaking branch of the government.")).

Accordingly, we overrule the Acting Secretary's preliminary objection that the Senate Committee lacks capacity to sue.

### 2. Demurrer to Writ of Mandamus

The Acting Secretary next argues that the Senate Committee is not entitled to a writ of mandamus because it has no clear right to relief under Section 802 of The Administrative Code of 1929, 71 P.S. §272, or Section 1 of the Act of 1791, 71 P.S. §801. Mandamus does not lie because the duty in question is not ministerial in nature.

The Acting Secretary observes that neither the Senate Committee nor its Chairman has requested the Acting Secretary to produce documents pursuant to Section 802 of The Administrative Code of 1929, 71 P.S. §272, or Section 1 of the Act of 1791, 71 P.S. §801. The Committee's subpoena *duces tecum* did not reference either statute. In any case, responding to a legislative request for records is not a ministerial act because the legislature seeks voter registration information

13

that involves an informational privacy interest. The Acting Secretary must do a balancing of that informational privacy interest with the public interest before disclosing the information and only after the Senate Committee demonstrates a valid legislative purpose for its request.

The Senate Committee acknowledges that it did not cite The Administrative Code of 1929 or the Act of 1791 in its subpoena *duces tecum*. However, it argues that the Acting Secretary's duty under those statutes is not contingent on the Senate Committee's written citation thereto and, further, the absence of precedent on these two statutes does not mean that the right of the Senate Committee is not clear. As explained by the Pennsylvania Supreme Court, "mandamus will lie to compel performance by a public official of a legal duty even if the existence and/or scope of the duty must be found and defined in the mandamus action itself." *Volunteer Firemen's Relief Association of City of Reading v. Minehart*, 203 A.2d 476, 479 (Pa. 1964). Here, the statutes are clear that the Senate Committee has an unqualified right to inspect and examine all records held by the Department, and the Committee need not demonstrate that its request has a valid legislative purpose. Agencies must respond to information requested by the legislature. *See Thornburgh v. Lewis*, 470 A.2d 952, 957-58 (Pa. 1983) (Governor required to respond to information demanded by minority chairman of Senate committee under The Administrative Code of 1929 providing access to information), *affirming Lewis v. Thornburgh*, 462 A.2d 310, 318 (Pa. Cmwlth. 1983) ("request by any of the appropriations committee chairmen, majority or minority, is sufficient to require the submission of the budgetary data" because "openness of information in government is to be encouraged, emphasized, and, if necessary, required").

We begin with a review of the principles of mandamus. A writ of mandamus is an extraordinary remedy that seeks to compel the performance of a

14

ministerial act or mandatory duty by a public official. *Rosario v. Beard*, 920 A.2d 931, 934 (Pa. Cmwlth. 2007). Mandamus cannot compel the public official to exercise discretion in a particular way. *Nader v. Hughes*, 643 A.2d 747, 752 n.13 (Pa. Cmwlth. 1994). A writ of mandamus requires a clear legal right to relief in the petitioner, a corresponding duty in the respondent, and a lack of any other appropriate or adequate remedy. *McGill v. Pennsylvania Department of Health, Office of Drug and Alcohol Programs*, 758 A.2d 268, 270 (Pa. Cmwlth. 2000). "A mandatory duty is one which a public officer is required to perform upon a given state of facts and in a prescribed manner in obedience to the mandate of legal authority." *Chester Community Charter School v. Department of Education*, 996 A.2d 68, 75 (Pa. Cmwlth. 2010) (quotation omitted).

Section 802(a) of The Administrative Code of 1929 requires the Acting Secretary to provide a legislative committee with documents filed with the Department. Section 802(a) states as follows:

> The Department of State shall have the power and *its duty shall be*:
>
> (a) *To permit any committee of either branch of the General Assembly to inspect and examine the books, papers, records, and accounts, filed in the department, and to furnish such copies or abstracts therefrom, as may from time to time be required[.]*

71 P.S. §272(a) (emphasis added). Section 1 of the Act of 1791, states, in relevant part, as follows:

> The following duties be enjoined on the secretary of the commonwealth, in addition to those prescribed in the constitution: . . . Fourth, *The books, papers and accounts of the secretary shall be open to the inspection and examination of committees of each branch of the legislature, and secretary shall furnish such copies, or abstracts, therefrom, as may from time to time be required.*

15

71 P.S. §801 (emphasis added). Both statutes state a mandate. The Department "shall" permit "any committee" "to inspect and examine the books, papers, records, and accounts, filed in the department," 71 P.S. §272(a), and the Secretary of the Commonwealth "shall" open all accounts and records to committees of the legislature. 71 P.S. §801. Neither statute requires the legislative committee to present its request in a particular form as a prerequisite to the document inspection.

The Pennsylvania Election Code[9] permits the inspection of all data and figures within voting machines "by direction of any legislative committee." Specifically, Section 1230 of the Election Code states as follows:

> As soon as possible after the completion of the count in districts in which voting machines are used, the county board shall have the voting machines properly boxed, and removed to the place of storage provided for in this act. The voting machines shall remain locked against voting for the period of twenty days next following each primary and election, and as much longer as may be necessary or advisable because of any existing or threatened contest over the result of the primary or election, with due regard for the date of the next following election or primary, except that they may be opened and *all the data and figures therein examined under the provisions of this act*, by order of any court of competent jurisdiction, or judge thereof, or *by direction of any legislative committee to investigate and report upon contested primaries or elections affected by the use of such machines, and such data and such figures shall be examined by such committee in the presence of the officer having the custody of such machines*.

25 P.S. §3070 (emphasis added). Section 1230 underscores the power of a legislative committee to inspect election-related materials, at either the county or state level, or both.

---

[9] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§2600-3591.

16

The Court need not decide whether the Acting Secretary must provide the subpoenaed records to the Senate Committee pursuant to Section 802 or Section 1. The existence of another legal remedy precludes the issuance of a writ of mandamus.

> Article II, Section 11 of the Pennsylvania Constitution states as follows:
>
> *Each House shall have power* to determine the rules of its proceedings and punish its members or other persons for contempt or disorderly behavior in its presence, *to enforce obedience to its process*, to protect its members against violence or offers of bribes or private solicitation, and, with the concurrence of two-thirds, to expel a member, but not a second time for the same cause, *and shall have all other powers necessary for the Legislature of a free State*. A member expelled for corruption shall not thereafter be eligible to either House, and punishment for contempt or disorderly behavior shall not bar an indictment for the same offense.

PA. CONST. art. II, §11 (emphasis added). The Pennsylvania Supreme Court has recognized that "[a]s long ago as 1842 the General Assembly provided that each branch of the legislature shall have the subpoena power and the power to commit to prison 'any witness brought to the bar of either house (who) shall refuse . . . to render an answer to all legal questions duly propounded.'" *Commonwealth ex rel. Carcaci v. Brandamore*, 327 A.2d 1, 5 (Pa. 1974) (citing Section 1 of the Act of June 13, 1842, P.L. 491, 46 P.S. §61[10]). It held, further, that the legislature's process provided the reluctant witness with due process of law.

---

[10] It states:

> *Each branch of the legislature shall have the power to issue their subpoena, as heretofore practiced, into any part of the commonwealth*, and by attachment to compel the attendance of all persons summoned as witnesses, and in case any witness brought to the bar of either house shall refuse to be sworn or affirmed, or having been sworn or affirmed, shall refuse to render an answer to all legal questions duly propounded, the speaker of the house before which such refusal shall be made, shall have full power by the direction of the said house to issue to the

17

An adequate remedy at law can be common law action, such as a tort action or a statutory remedy. *Sewell v. Solomon*, 465 A.2d 130, 132 (Pa. Cmwlth. 1983). An appeal on the merits after a final judgment also precludes an action in mandamus. *Hoyt v. Pennsylvania Department of Corrections*, 79 A.3d 741, 743 (Pa. Cmwlth. 2013). In *Watters v. Department of Corrections*, 509 A.2d 430, 433 (Pa. Cmwlth. 1986), this Court held that the inmate grievance review system constituted a legal remedy that barred a writ of mandamus. The Senate Committee argues that a remedy at law is limited to a quasi-judicial or judicial remedy, not a legislative remedy provided by the Pennsylvania Constitution. We disagree. An inmate grievance review system is a remedy that bars mandamus, even though it does not result in an order than can be appealed to a court.

The Senate Committee has express constitutional authority to enforce its subpoena *duces tecum*. PA. CONST. art. II, §11. It may enforce its subpoena in accordance with the contempt statutes. 18 Pa. C.S. §5110; 46 P.S. §61. These constitutional and statutory remedies preclude the Senate Committee's request for a writ of mandamus. *McGill*, 758 A.2d at 270.

---

sergeant-at-arms a warrant of commitment to the prison of Dauphin county, the inspectors and keepers thereof are hereby authorized and required to receive and confine such delinquent so committed until discharged in due course; and the expense of such imprisonment shall be paid out of any money in the state treasury not otherwise appropriated.

46 P.S. §61 (emphasis added). Further,

[i]f any such person so committed to prison, shall persist in his refusal to swear or affirm, or being sworn or affirmed shall still, on being brought before such house from the prison, refuse to testify, such house may make a further order for the detention of such delinquent in said prison until the next succeeding legislature shall have met, and until the proper house succeeding the one which ordered the commitment originally, shall make an order for his further detention, or discharge as to them shall seem expedient.

Section 2 of the Act of June 13, 1842, 46 P.S. §61a.

18

## II. Senate Committee's Application for Summary Relief

The Senate Committee argues that it is entitled to summary relief in the form of peremptory mandamus because the Acting Secretary has a mandatory duty to produce the subpoenaed information under Section 802(a) of The Administrative Code of 1929 and Section 1 of the Act of 1791.

In evaluating an application for summary relief, the Court applies the same standards that apply to summary judgment. *Flagg v. International Union, Security, Police, Fire Professionals of America, Local 506*, 146 A.3d 300, 305 (Pa. Cmwlth. 2016). Specifically, summary relief is appropriate where the moving "party's right to judgment is clear and no material issues of fact are in dispute." *Jubelirer v. Rendell*, 953 A.2d 514, 521 (Pa. 2008); PA.R.A.P. 1532(b).[11]

The Senate Committee chose to seek the election-related materials by issuing a subpoena *duces tecum* using its constitutional powers. There is an established route for enforcement of a legislative subpoena. PA. CONST. art. II, §11 ("Each House shall have power . . . to enforce obedience to its process[.]"). Similar to the exercise of equity jurisdiction, the decision to issue a writ of mandamus is committed to the sound discretion of the court. The Senate Committee's constitutional power precludes the issuance of a common law writ of mandamus to enforce its subpoena.

Article II, Section 11 of the Pennsylvania Constitution provides, in relevant part:

---

[11] It states:

> At any time after the filing of a petition for review in an appellate or original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear.

PA.R.A.P. 1532(b).

19

*Each House shall have power* to determine the rules of its proceedings and punish its members or other persons for contempt or disorderly behavior in its presence, *to enforce obedience to its process*, to protect its members against violence or offers of bribes or private solicitation . . . and shall have all other powers necessary for the Legislature of a free State.

PA. CONST. art. II, §11 (emphasis added). "Nothing is more important to the continued health of our American constitutional system than that each of the three branches of our Federal and State governments refrain from intermeddling or interfering in matters committed by the people to other branches." *Sweeney v. Tucker*, 351 A.2d 308, 312 (Pa. Cmwlth. 1976). This Court has held that Article II, Section 11 is a "textually demonstrable constitutional commitment of the issue [] to a coordinate political department[.]" *Id*. at 312. There is no room for the judiciary in a matter governed by Article II, Section 11 of the Pennsylvania Constitution.

The Senate Committee has chosen to seek the election-related materials by legislative subpoena, and it is bound by that choice. The subpoena *duces tecum* can be enforced by the legislature, and its constitutional power needs no augmentation in the form of a common law writ of mandamus.

**Conclusion**

For the above reasons, we deny the Senate Committee's application for summary relief. We overrule the preliminary objections asserting lack of capacity to sue, but we sustain the preliminary objection in the nature of demurrer and dismiss the petition for review.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge McCullough, Judge Covey, Judge Fizzano Cannon and Judge Wallace did not participate in the decision in this case.

Judge Wojcik concurs in the result only.

20

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Senate : 
Intergovernmental Operations : 
Committee, : 
           Petitioner : 
            : 
      v. : No. 95 M.D. 2022
            : 
Pennsylvania Department of State : 
and Leigh Chapman, in her Capacity : 
as Acting Secretary of the : 
Commonwealth, : 
           Respondents : 

## ORDER

AND NOW this 9th day of February, 2023, the application for summary relief filed by the Pennsylvania Senate Intergovernmental Operations Committee is DENIED.  The preliminary objection filed by Intervenors, Senator Jay Costa, Senator Anthony H. Williams, Senator Vincent J. Hughes, Senator Steven J. Santarsiero, and the Senate Democratic Caucus, to Petitioner's capacity to sue is OVERRULED.  The preliminary objection filed by the Pennsylvania Department of State and Leigh Chapman, as Acting Secretary of the Commonwealth, to the Pennsylvania Senate Intergovernmental Operations Committee's capacity to sue is OVERRULED, and the preliminary objection in the nature of a demurrer is SUSTAINED.  The petition for review is DISMISSED.

_____
MARY HANNAH LEAVITT, President Judge Emerita